IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN JUDGE;

 *Plaintiff*,

v.

KNAUF GIPS KG; and, KNAUF
PLASTERBOARD TIANJIN CO., LTD.;

 *Defendants*.

Civil Action No. 2:21-cv-889

JURY TRIAL DEMAND

## COMPLAINT

  Plaintiff alleges that a defective Chinese-manufactured drywall product has been found in his home. Based on the markings found on the defective product, Plaintiff brings this action against the two named Knauf entities, (collectively hereinafter "Knauf" or "Knauf Entities" or "Defendants), who are the manufacturers (or their agents) of the defective drywall.

  Plaintiff previously filed his claim in a civil action styled *Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al*. on January 30, 2016. The *Bennett* case, originally filed in the Northern District of Alabama, was transferred to MDL-2047 in the United States District Court for the Eastern District of Louisiana for consolidated pretrial proceedings and, after remand in 2020, the parties agreed to transfer all individual actions to the federal district courts where the respective affected properties are located. The Alabama *Bennett* action containing the claims of all plaintiffs with affected properties in the Middle District of Florida was transferred to this court on October 26, 2021, and, after receipt by this court, was styled as *Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,* with an assigned civil action number of 8:21-cv-02501-MSS-CPT. On October 29, 2021, this Court issued an Order in

the *Bennett* case (Doc. 35) directing the severance of individual claims and the filing of individual civil actions.

Plaintiff in this action, severed from *Bennett*, is a Florida property owner and has named these Defendants because their conduct has contributed to a common series of actions or occurrences that lead to Plaintiff's damages. Each Defendant in this action is liable for damages incurred by Plaintiff due to their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall at issue.

## **JURISDICTION, PARTIES, AND VENUE**

1. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(a)(2) as the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiffs are owners of real property in Florida within this district and all Defendants are foreign business entities; thus, complete diversity exists.

2. This Court has supplemental jurisdiction over this matter under 28 U.S.C. §1367 as all Defendants are subject to the Florida Long-Arm Statute, Fla. Stat. §48.193, for the tortious conduct described herein.

3. Venue in this district satisfies the requirements of 28 U.S.C. § 1391(b) and (c) because Plaintiffs reside in United States within this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this district, or a substantial part of the property that is the subject of this action is situated in this district, while all Defendants are foreign business entities with no principal place of business or company headquarters located within Florida.

## PLAINTIFFS

4. Plaintiff, John Judge, is a citizen of Florida and owns real property in Lee County, located at 2618 50th Street West, Lehigh Acres, Florida 33971. Plaintiff is bringing claims against Defendants as set forth in the following paragraphs of this Complaint.

## DEFENDANTS

5. All Defendants are foreign entities organized in foreign countries, with business headquarters and primary business operations also located in foreign countries.

6. Defendant Knauf GIPS, KG ("Knauf GIPS") is a German company doing business in several states including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf GIPS maintains its company headquarters at Am Bahnhof 7, 97346 Iphofen, Germany. Knauf GIPS is a leading manufacturer of building materials and systems sold worldwide. Knauf GIPS together with Knauf Plasterboard Tianjin Co., Ltd, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all times material hereto, Knauf GIPS supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin and its agents, apparent agents, and employees. This conduct by Knauf GIPS has resulted in harm and damages to Plaintiffs.

7. Defendant Knauf Plasterboard Tianjin Co., Ltd. ("Knauf Tianjin" or "KPT") is a foreign company doing business in several states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. KPT is the actual agent and/or apparent agent of Knauf GIPS. KPT manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall

would be purchased by thousands of consumers throughout the United States. KPT is a maintains its company headquarters at: East of Jingjin Highway (North of Yinheqiao), Beichen District Tianjin, 300400 China. KPT manufactured the defective drywall at issue and systematically distributed and sold its drywall to numerous purchasers in the United States with the assistance of other Knauf Entities. This conduct by KPT has resulted in harm and damages to Plaintiffs.

8. Defendant Knauf GIPS, together with its affiliates and/or actual or apparent agents, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers within various states, including but not limited to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, Texas, and Virginia. Defendants manufactured and sold, directly and indirectly, to certain suppliers in the United States and the State of Florida. Agents or representatives of Knauf Tianjin intentionally directed communications to distributors in the United States, employed U.S. distributors as agents for the company, shipped product intending for it to be distributed in the U.S., and otherwise engaged in commerce and/or circumstances that the company reasonably should have expected that it could be hailed into the U.S. courts.

9. In 1995, Knauf Entities introduced its advanced production techniques and technology into China through Knauf GIPS. From 1997 through 2001, Knauf GIPS serviced the investments of Knauf International in China and established three plasterboards plants located in Wuhu, Tinajin, and Dongguan. The product quality of all Knauf's plants in China, including KPT, are strictly controlled according to the requirements of Knauf GIPS' headquarters in Germany. Knauf GIPS's sales and technical support teams support Knauf's businesses throughout the world, including Knauf Tianjin in China. KPT and their employees are controlled

by and the actual and/or apparent agents of Knauf GIPS, as all Knauf Entities act without regard to corporate formalities and as a single business entity.

10. The Knauf Entities manufactured and sold, directly and indirectly, to certain suppliers in the United States. The Knauf Entities directly controlled the sale activity through its global family of businesses, including the importation of defective drywall. At all times, executives within Knauf GIPS provided oversight of international sale of KPT drywall. And, when defective drywall was identified in the United States, executives of multiple Knauf-related businesses, including Knauf GIPS, conducted the subsequent investigation related to the KPT drywall exported to the United States.

**GENERAL ALLEGATIONS**

11. Defendants' drywall is predominately composed of gypsum.

12. In the defective drywall (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold and/or installed by Defendants herein), the gypsum and other components of the product react, break down, and release sulfur compounds and other noxious gases from the drywall.

13. The sulfur compounds, including Hydrogen Sulfide, Carbonyl Sulfide, and Carbon Disulfide, exit Defendants' drywall and cause rapid sulfidation and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

14. Exposure to sulfur compounds and the other noxious gases emitted from Defendants' drywall cause personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

15. Although the drywall functions according to is intended purpose as a building component, it is unfit for this purpose due to the damaging side effects and/or because its use is so inconvenient that Plaintiffs would not have purchased their homes had the side effects been disclosed by Defendants.

16. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs home, structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases being released from Defendants' defective drywall.

17. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, sold and/or installed defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' home and/or caused personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

18. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed and/or sold the defective drywall at issue in this litigation.

19. Defendants recklessly, wantonly, and/or negligently implemented faulty procedures for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or character of the defective drywall at issue in this litigation.

20. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases released from these products, Plaintiffs have suffered, and continue to suffer, economic harm and injury.

21. As a direct and proximate result of Defendants' defective drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection; costs and expenses necessary to fully remediate or abate their home; cost of alternative living arrangements; cost to replace other personal property that has been damaged; lost value or devaluation of their homes; stigma damages; and, loss of use and enjoyment of their home and property.

22. As a direct and proximate result of Defendants' latent defect in its drywall and the harmful effects of the sulfur compounds that exit these products, Plaintiffs have a need for injunctive relief in the form of repair and remediation of their home, rescission of contracts, and the ordering of corrective notice to the Consumer Product Safety Commission, the federal agency charged with implementing a corrective action plan for defective consumer products sold in the United States of America.

## COUNT I
## NEGLIGENCE

23. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

24. Defendants owed a duty to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall, including a duty to adequately warn of their failure to do the same.

25. Defendants knew or should have known that their wrongful acts or omissions would result in harm and damages in the manner set forth herein.

26. Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

27. Defendants likewise breached their duties to Plaintiffs by failing to warn about the defective nature of the drywall. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the homes and personal property of Plaintiffs.

28. Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs with the drywall, upon learning it had been sold in an unreasonably dangerous condition.

29. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs.

30. As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

## COUNT II
## NEGLIGENCE PER SE

31. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

32. Defendants owed statutory duties to Plaintiffs to exercise reasonable care in designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

33. Defendants breached their statutory duties to the Plaintiffs by failing to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, selling, and/or installing this drywall.

34. Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other state and local building codes, to Plaintiffs by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTM C 1396/C 1396M-069, and its predecessor(s), including ASTM C36.

35. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the home of Plaintiffs.

36. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm and damages to Plaintiffs.

37. As a direct and proximate cause of Defendants' acts or omissions, Plaintiffs were harmed and have incurred damages as described herein.

## COUNT III
### STRICT LIABILITY

38. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth fully herein.

39. At all times relevant hereto, Defendants were in the business of distributing, delivering, supplying, inspecting, marketing, and/or selling drywall for sale to the general public.

40. The drywall, including that installed in the home of Plaintiffs was placed by Defendants into the stream of commerce.

9

41. Defendants knew that the subject drywall would be used without inspection for defects by consumers.

42. Defendants intended that the drywall reach the ultimate consumers, including Plaintiffs, and it indeed reached Plaintiffs when it was installed in their home.

43. When installed in Plaintiffs' home, the drywall was in substantially the same condition as it was in when Defendants manufactured, sold, and/or delivered it.

44. At all times relevant hereto the subject drywall was used in a manner consistent with the uses intended by, or known to Defendants, and in accordance with the Defendants' directions and instructions.

45. The subject drywall was not misused or altered by any third parties.

46. The Defendants' drywall was defectively manufactured, designed, inspected, tested, marketed, distributed, and sold.

47. The design defect was in designing drywall that allowed high levels of sulfur and/or other chemicals to emit through off-gassing.

48. The manufacturing defect was in improperly selecting, testing, inspecting, mining, making, assembling, and using, gypsum for drywall with levels of sulfur that were too high and emitted various sulfide gasses and/or other chemicals through off-gassing.

49. The drywall was also defective because it was improperly exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold in a defective condition, as described above.

50. The Defendants' defective manufacturing, designing, inspecting, testing, marketing, distributing, and selling of the drywall rendered it unsafe and unreasonably dangerous for its intended use by Plaintiffs.

51. The drywall is also defective and unreasonably dangerous because Defendants failed to adequately warn and instruct Plaintiffs of the defective design, inspection, testing, manufacturing, marketing, and selling of the drywall.

52. Plaintiffs were neither aware of the unreasonably dangerous propensities and defective condition of the drywall, nor could Plaintiffs, acting as reasonably prudent people discover that Defendants' drywall was defective, as set forth herein, or perceive its danger.

53. Defendants' defective drywall was much more dangerous and harmful than expected by the average consumer and by Plaintiffs.

54. The benefit, if any, of Plaintiffs using Defendants' defective drywall was greatly outweighed by the risk of harm and danger.

55. The defects in the drywall, as well as Defendants' failure to adequately warn Plaintiffs of the defects rendered the drywall unreasonably dangerous, was the direct and proximate cause of damages incurred by Plaintiffs.

## COUNT IV
### BREACH OF EXPRESS AND/OR IMPLIED WARRANTY

56. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

57. Defendants and/or their agents were in privity with Plaintiffs and/or Plaintiffs were foreseeable third-party beneficiaries of any warranty.

58. At the times Defendants' drywall was installed, utilized, supplied, inspected, sold, in the Plaintiffs' home, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in the Plaintiffs' home for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

59. Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and

persons coming into contact with said products without substantial change in the condition in which they were sold.

60. The drywall was defective because it was not fit for the uses intended by Defendants; the installation of the drywall in Plaintiffs' home was not suitable for use as a building material, because it contained the defects as set forth herein.

61. The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in Plaintiffs' home as a building material) due to the defects set forth herein.

62. Defendants had reasonable and adequate notice of the Plaintiffs' claims for breach of warranty and failed to cure.

63. As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs have incurred harm and damages as described herein.

## COUNT V
## PRIVATE NUISANCE

64. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

65. The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into Plaintiffs' home which has unreasonably interfered, and continues to interfere, with the Plaintiffs' use and enjoyment of their properties and caused them harm and damage as discussed herein.

66. Defendants' interference has impaired the rights of Plaintiffs' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

67. Defendants' invasions were intentional and unreasonable, and/or unintentional, but otherwise negligent or reckless.

68. The interference with Plaintiffs' use of their property was caused by Defendants and is substantial and is ongoing.

69. Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

70. As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs have incurred harm and damages and injuries as described herein.

## COUNT VI
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE

71. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

72. Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

73. Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the home or other structures owned by Plaintiffs.

74. By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs.

75. Defendants likewise breached their duties to Plaintiffs by failing to warn about the corrosive and dangerous propensities of the drywall.

76. Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs.

77. Plaintiffs have incurred damages by virtue of exposure of their property to the defective drywall at issue in this litigation. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product would cause injury to Plaintiffs.

78. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs were harmed and have incurred damages as described herein. The injuries sustained by Plaintiffs are within the foreseeable zone of risk created by Defendants.

## COUNT VII
## UNJUST ENRICHMENT

79. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

80. Defendants received money as a result of Plaintiffs' purchase of Defendants' defective drywall, or purchase of homes containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs.

81. Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs.

82. Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

## COUNT VIII
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

83. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

84. This is an action for relief under F.S. § 501.201, *et seq*. (Florida Deceptive and Unfair Trade Practices Act).

85. The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the provisions of the Florida Deceptive and Unfair Trade Practices Act.

86. Plaintiffs have suffered actual damages as a result of Defendants' violation of this Deceptive and Unfair Trade Practices Act and are entitled to relief.

87. As a direct and proximate cause of Defendants' violation of the Deceptive and Unfair Trade Practices Act, Plaintiffs have incurred harm and damages as described herein.

## **EQUITABLE AND INJUNCTIVE RELIEF**

88. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

89. Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

90. Plaintiffs will suffer irreparable harm if the Court does not render the injunctive relief as set forth herein, and if Defendants are not ordered to recall, rescind, and/or repair the homes and structures owned by Plaintiffs.

91. Plaintiffs demand injunctive and equitable relief and further, that Defendants be ordered to: (1) remediate, repair and/or replace the drywall in the homes and structures upon proof by the Defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the general public that there is no defect in, or danger associated with the drywall; and, (3) institute, at their own cost, a public awareness campaign to alert the general public of the defect and dangers associated with their defective drywall.

92. Until Defendants' defective drywall has been removed and Plaintiffs' home is properly remediated, Defendants should provide continued environmental and air monitoring in the home.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs demand upon Defendants jointly and severally for:

a. Compensatory damages;

b. Statutory damages;

c. Punitive damages;

d. Prejudgment interest as allowed by Florida law from the date of loss;

e. Post-judgment interest as allowed by Florida law;

f. Injunctive relief;

g. An award of attorney's fees as allowed by Florida law;

h. An award of taxable costs; and

i. Any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues so triable as a matter of right.

/s/ *James V. Doyle*

James V. Doyle (Fla. Bar No. 121505)
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jim.doyle@doylefirm.com

*Attorney for Plaintiffs*