UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN JUDGE,

      Plaintiff,

v.                       Case No:  2:21-cv-889-JES-DAB

KNAUF GIPS KG, KNAUF
PLASTERBOARD TIANJIN CO.
LTD., and KNAUF NEW BUILDING
SYSTEM (TIANJIN) CO. LTD.,

      Defendants.

_____

**OPINION AND ORDER**

This products liability case involves defective Chinese-manufactured drywall used to construct homes throughout the Gulf Coast and East Coast of the United States.  The Court adopts without repeating the procedural history of the case set forth by United States Magistrate Judge David A. Baker in his Report and Recommendation. (Doc. #44, pp. 2-9.)  John Judge (Plaintiff or Judge) is a plaintiff in one of the twenty-five cases remanded from the United States Judicial Panel on Multidistrict Litigation (MDL) to the Northern District of Alabama and ultimately transferred to the Middle District of Florida.

In his Complaint (Doc. #1), Judge alleges that defendants Knauf Gips KG (Kanuf Gips) and Knauf New Building System (Tianjin) Co. Ltd. f/k/a Knauf Plasterboard Tianjin Co. Ltd (KPT)

(collectively Defendants) are liable for damages for their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective drywall.  (Doc. #1, pp. 1-2.)   Plaintiff's claims include: (1) negligence (Count I); (2) negligence per se (Count II); (3) strict liability (Count III); (4) breach of express and/or implied warranty (Count IV); (5) private nuisance (Count V); (6) negligent discharge of a corrosive substance (Count VI); (7) unjust enrichment (Count VII); and (8) violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count VIII). Plaintiff seeks compensatory, statutory, and punitive damages, along with pre-judgment interest, injunctive relief, and attorney's fees and costs. (Id., pp. 7-16.)

Defendants filed an Answer and Affirmative Defenses (Doc. #31), which raised forty-six (46) affirmative defenses, including that "[p]unitive damages are barred under Fla. Stat. Ann. § 768.73(2)(a)." (Id., pp. 27-28, ¶ 32.)   Pursuant to a Case Management and Scheduling General Order (Doc. #33), Defendants filed a Motion for Partial Summary Judgment as to Issues Common to All Cases (Doc. #38).  An Order Deferring in Part and Adopting in Part Report and Recommendation on Summary Judgment Issues Common to All Cases (Doc. #49) was issued by District Judge Tom Barber. Judge Barber granted summary judgment limiting plaintiffs' damage recovery on their FDUTPA claims to the reduction in value of the

drywall because of the alleged defect, but deferred consideration of the punitive damages to the individual district judges assigned to the individual cases.

In a prior Opinion and Order, the undersigned found that Defendants had established that Fla. Stat. § 768.73(2)(a) precludes punitive damages in this case unless Plaintiff establishes by clear and convincing evidence that the prior award of punitive damages was "insufficient to punish that defendant's behavior." (Doc. #51, pp. 15-19) (citing Fla. Stat. § 768.73(2)(b)). The Court determined an evidentiary hearing was appropriate to address this remaining issue. (Id.)

The Court held an evidentiary hearing on May 23, 2023. (Doc. #67.) A transcript of that hearing was docketed with the Court. (Doc. #70.) Defendants filed a Notice of Supplemental Authority (Doc. #72) on November 1, 2023.[1]

For the reasons set forth below, the Court finds that plaintiff has not established by clear and convincing evidence that the prior award of punitive damages was insufficient to punish defendants' behavior. Accordingly, the Court will not allow plaintiff to seek punitive damages in this case.

---

[1] The supplemental authority was a new decision by a district court in Alabama which did not address the sufficiency of a prior award of punitive damages but the sufficiency of plaintiffs' evidence supporting punitive damages in their own case. That issue is not before the Court.

**I.**

### A. Brief Overview of Factual Background

In December 2005, KPT began shipping drywall from China to the United States.    (Doc. #69-10, p. 7.)    In Defendant Manufacturers' Profile Form (Doc. #69-10), KPT indicated that La Suprema Enterprise, Inc. was the only company it used to ship the Chinese-manufactured drywall to Florida.    (Id. at 7.)    KPT began shipping drywall to Florida in mid-January 2006, and ceased shipping any drywall to anywhere in the United States in mid-August 2006. (Id. at 7-8; Doc. #70, pp. 21-22.)    The net proceeds to KPT from these shipments to the United States between December 2005 and August 2006 was approximately $3 million. (Doc. #70, at 21-22.)    KPT has not sold, shipped, or delivered any Chinese-manufactured drywall to the United States since mid-August 2006. (Id.)

KPT sold the Chinese-manufactured drywall to three companies in the United States, including Rothchilt International Limited (Doc. #69-10 at 7-8.)   A portion of the drywall sold to Rothchilt International found its way to Banner Supply Company (Banner Supply) in Florida (Doc. #70, pp. 65-66), which re-sold it to customers in Florida.

In 2006-2007, KPT began to get complaints that some of the drywall obtained by Banner Supply "smelled." (Doc. #69-12, pp. 5, 15.) At the time, KPT did not believe the Chinese-manufactured

4

drywall was "defective" simply because it had an odd smell, since it basically smelled like "Chinese" drywall.  (Id., p. 5.) KPT believed that the odd smelling drywall obtained by Banner Supply was an isolated incident since it sold the same drywall in China and had no complaints about an odor. (Id., p. 12.)

In January 2007, prior to a lawsuit being filed, KPT and Banner Supply entered into a "Confidential Settlement Agreement and Release" in which KPT agreed to take back the odd-smelling drywall and replace it with new drywall.  The parties also agreed to a mutual release from all liability and to confidentiality provisions, including a $5,000 penalty for each time Banner Supply breached the confidentiality provisions. (Doc. #68-1.)  There was no evidence presented at the evidentiary hearing suggesting that Banner Supply ever breached its confidentiality obligations, or that the agreement has ever been rescinded.

In the end of 2008, KPT began to hear of complaints about corrosion-related effects from the Chinese-manufactured drywall sold in the United States.  (Doc. #69-12, pp. 16-17.)  KPT asserted it had never experienced such issues before. (Id., p. 20.)  By 2009, numerous lawsuits had been filed against Defendants for damages resulting from the defective drywall.

In 2009, the MDL consolidated and transferred the federal Chinese-manufactured drywall cases to the Eastern District of Louisiana, where it was assigned to United States District Judge

Eldon E. Fallon.  In December 2012, the Defendants and Plaintiffs'
Steering Committee entered into a global, class settlement
agreement for resolution of the Chinese-manufactured drywall
claims.  This global settlement received final approval in February
2013. (Docs. #68-7 to #69-9.)   In November 2013, Defendants
extended the deadline for homeowners to file claims in the MDL and
did so again in November 2014. (Doc. #70, p. 71.)

As a result of the MDL litigation and settlement, Defendants
expended approximately $700 million in remediation or cash
contributions to resolve approximately 5,500 claims. (Id., pp. 48-
49.)  The total amount paid by defendants to resolve all claims,
including attorney fees and expenses, was slightly above $1
billion. (Id. at 49-50.)

**B. Court's Prior Relevant Findings on Motion For Partial Summary Judgment**

Defendants filed court documents from Robin v. Knauf
Plasterboard (Tianjin) Co. Ltd., Case No. 10-59323-CA-42 (Robin),
to establish that punitive damages were previously awarded against
them for the same course of conduct as alleged in this case.  These
documents include a copy of the Amended Complaint, the Jury
Verdict, the Final Judgments, and the Satisfactions of the Final
Judgment.  (Docs. #69-1 to 69-6.)[2]  As the Court has previously

---

[2] Plaintiff does not challenge the authenticity of Defendants'
exhibits from the Robin litigation.  (Doc. #41, p. 7.)

found, these documents establish the following material undisputed

facts:

- On or about December 9, 2011, Jeffrey Robin and Elisa Robin sued defendants Knauf Gips KG (Knauf Gips), Knauf Plasterboard (Tianjin) Co. Ltd. (n/k/a Knauf New Building System (Tianjin) Co. Ltd.), and other defendants in Miami-Dade Circuit Court in an action captioned Robin v. Knauf Plasterboard (Tianjin) Co. Ltd., Case No. 10-59323-CA-42.  Knauf Gips KG is one of the defendants in the current federal case.  Knauf Plasterboard Tianjin Co. Ltd is the former name of Knauf New Building System (Tianjin) Co. Ltd. (KNB) (see Doc. #20, ¶ 2), the other defendant in the current federal case.

- The Robins sued each defendant for harm resulting from acts relating to the manufacturing, design, installation, etc. of defective Chinese drywall in their home in Miami, Florida.  Plaintiffs purchased their residence on July 31, 2008, and thereafter had the Chinese drywall installed. (Doc. #38-1, ¶¶ 29-30.)  Plaintiffs did not learn of the defective drywall until late 2009 or early 2010.  (Doc. #38-1, ¶ 24.)

- The Robins sought compensatory damages in the state case for harm caused by each Defendant and sought punitive damages from each defendant. (Doc. #38-1, ¶¶ 211-15 and "Wherefore" clause.)

- The harm alleged in Robin was from a single course of conduct for which Plaintiff Judge seeks compensatory damages in the current federal case.

- On November 22, 2013, a jury returned a verdict awarding Plaintiffs $1 million in punitive damages against defendant Knauf Plasterboard (Tianjin) and $5 million in punitive damages against defendant Knauf Gips.  (Doc. #38-2.)

- On August 26, 2014, the state court judge entered a Final Judgment awarding compensatory and

7

punitive     damages     against     KPT     totaling
$1,362,239.98   and   compensatory   and   punitive
damages     against     Knauf     Gips     totaling
$5,772,778.62.   (Doc. #38-3.)

- On March 7, 2017, the plaintiffs filed a
Satisfaction of Judgment (which had been signed
on August 23, 2016) in the state trial court
acknowledging that all sums due under the Final
Judgment "have been fully paid" and the judgment
was canceled and satisfied.  (Doc. #38-5.)

(Doc. #51, pp. 8-10.)  Relying on Knauf Plasterboard (Tianjin) Co.
v. Ziegler, 219 So. 3d 882, 885-86 (Fla. 4th DCA 2017), the Court
found that Defendants had established a prior "award" of punitive
damages within the meaning of Fla. Stat. § 768.73(2)(a).  (Id. at
p. 15.)

**II.**

The effect of these findings is that defendants have
established the factual predicate under Fla. Stat. § 768.73(2)(a)
to preclude an award of additional punitive damages.  (Id. at pp.
15-18.)  This statutory bar, however, is subject to a statutory
exception.  See Fla. Stat. § 768.73(2)(a) ("Except as provided in
paragraph b....")  Paragraph (b) provides:

(b) In **subsequent civil actions** involving the same act
or single course of conduct for which punitive damages
have already been awarded, **if the court determines by
clear and convincing evidence that the amount of prior
punitive damages awarded was insufficient to punish that
defendant's behavior,** the court **may** permit a jury to
consider an award of subsequent punitive damages. In
permitting a jury to consider awarding subsequent
punitive damages, the court shall make specific findings
of fact in the record to support its conclusion. **In
addition, the court may consider whether the defendant's**

8

> **act or course of conduct has ceased.** Any subsequent
> punitive damage awards must be reduced by the amount of
> any earlier punitive damage awards rendered in state or
> federal court.

Fla. Stat. § 768.73(2)(b) (emphasis added).  Thus, the remaining issues are whether there is clear and convincing evidence that the amount of the prior punitive damages award was insufficient to punish defendants' behavior and, if so, whether the Court should allow a jury in this subsequent case to consider an award of punitive damages.

### A. Clear and Convincing Evidence Standard

Section 768.73 does not define its "clear and convincing" evidentiary standard. See Owens-Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483, 486 n.4 (Fla. 1999).  Florida courts, however, have defined "clear and convincing evidence" as "an intermediate level of proof that entails both a qualitative and quantitative standard. The evidence must be credible; the memories of witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." Guida v. State, 356 So. 3d 310, 311 (Fla. 5th DCA 2023) (citation omitted).  See also S. Fla. Water Mgmt. v. RLI Live Oak, LLC, 139 So. 3d 869, 872 (Fla. 2014) ("The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established."

(citations omitted)); <u>Edwards v. State</u>, 351 So. 3d 1142, 1151 (Fla. 1st DCA 2022) ("[E]vidence is clear and convincing when the truth of the facts asserted is highly probable.").  The Court finds that this clear and convincing evidence standard applies in determining whether Plaintiff has established that "the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior" within the meaning of § 768.73(2)(b).

### B.  Punitive Damages Principles

Both the United States Supreme Court and the Florida Supreme Court recognize that the purpose of punitive damages is to punish and deter.  <u>BMW of N. Am., Inc. v. Gore</u>, 517 U.S. 559, 568 (1996) ("Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition."); <u>Owens-Corning Fiberglas Corp. v. Ballard</u>, 749 So. 2d 483, 486 (Fla. 1999) ("Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future.")  Only one of these purposes – punishment of a defendant for wrongful conduct – is the focus of the statutory exception in Fla. Stat. § 768.73(2)(b).

Florida courts routinely review the sufficiency of a money damages award to determine excessiveness or insufficiency.  "Under Florida law, 'in every case for money damages the trial court has

an obligation to determine if the damages award is 'excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.'" Kerrivan v. R.J. Reynolds Tobacco Co., 953 F.3d 1196, 1204 (11th Cir. 2020) (quoting Odom v. R.J. Reynolds Tobacco Co., 254 So. 3d 268, 276 (Fla. 2018)).   In determining the sufficiency of a punitive damages award, a court "considers the ratio of punitive damages to actual harm inflicted on the plaintiff. [] In practice, this means we examine the ratio of punitive damages to compensatory damages."  Cote v. Philip Morris USA, Inc., 985 F.3d 840, 848 (11th Cir. 2021) (internal citation omitted).  See also Kerrivan, 953 F.3d at 1209 ("Courts often employ a ratio of punitive to compensatory damages to test the reasonableness of the punitive damages award.")  A small ratio, however, does not necessarily establish insufficiency.  Mixson v. C.R. Bard Inc., 628 F. Supp. 3d 1159, 1166 (N.D. Fla. 2022) (prior punitive award which represented just 0.1% of defendant's net worth and was a fraction of a percent of its annual net profit did not show that award was insufficient).

Additionally, a defendant's financial condition is a consideration in determining the reasonableness of a punitive award: "an award must be reviewed to ensure that it bears some relationship to the defendant's ability to pay and does not result in economic castigation or bankruptcy of the defendant." Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1263-64 (Fla. 2006).   See

also Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1216 (11th Cir. 2010) (quoting Engle).  Further, the statute at issue here expressly allows the court to consider "whether the defendant's act or course of conduct has ceased."  Fla. Stat. § 768.73(2)(b).

**C. Whether Prior Punitive Damages Award Is "Insufficient"**

As the Court has previously found, the jury in Robin returned a verdict awarding those plaintiffs $1 million in punitive damages against defendant Knauf Plasterboard (Tianjin) and $5 million in punitive damages against defendant Knauf Gips.  The state court judge entered a Final Judgment awarding compensatory and punitive damages against KPT totaling $1,362,239.98 and compensatory and punitive damages against Knauf Gips totaling $5,772,778.62.  The Robin plaintiffs filed a Satisfaction of Judgment in the state trial court acknowledging that all sums due under the Final Judgment "have been fully paid" and the judgment was canceled and satisfied.  (Doc. #51, pp. 9-10.)

The Court finds by clear and convincing evidence that the instant case of Judge v. Knauf Gips KG & Knauf New Building System (Tianjin) Co. Ltd. f/k/a Knauf Plasterboard Tianjin Co. Ltd., Case No 2:21-cv-889-JES-DAB, is a "subsequent civil action[] involving the same or single course of conduct" as in Robin within the meaning of Fla. Stat. § 768.73(2)(b).

The clear and convincing evidence further establishes that: (1) defendants shipped the Chinese-manufactured drywall to Florida

only from January 2006 to August 2006; (2) the net proceeds to defendants for this drywall was approximately $3 million; (3) there were approximately 5,500 claims resolved by Defendants in the MDL proceedings; (4) as a result of the MDL litigation and settlement, Defendants expended approximately $700 million in remediation or cash contributions; and (5) the total amount paid by defendants to resolve all Chinese-manufactured drywall claims in the MDL, including attorney fees and expenses, was slightly above $1 billion.

One of the Court's considerations is the comparison of the amount of the prior award and the monetary impact of the behavior being punished. As previously stated, "[i]n practice, this means we examine the ratio of punitive damages to compensatory damages." Cote, 985 F.3d at 848.

The court documents from Robin establish that the prior punitive damages totaled $6 million. Plaintiff argues against using this amount, however, asserting that the total amount of punitive damages actually paid is highly relevant but is unknown because there was a still-secret post-judgment settlement in Robin. (Doc. #41, pp. 8-12; Doc. #70, p. 80.)

It is clear from the statute that the Court's initial determination focuses on "the amount of prior punitive damages awarded." Fla. Stat. § 768.73(2)(b). This is not to say that a non-payment of a prior punitive damages award has no relevance at

all.  Such non-payment can certainly be taken into account by the Court in the next step: deciding whether to exercise the discretion - vested by the word "may" - in deciding whether to "permit a jury to consider an award of subsequent punitive damages."

Plaintiff has not established by clear and convincing evidence that the prior award has not been paid or has been significantly compromised.  On March 7, 2017, the plaintiffs filed a Satisfaction of Judgment in the state trial court acknowledging that all sums due under the Final Judgment "have been fully paid" and the judgment was canceled and satisfied.  (Doc. #38-5.) Additionally, counsel for defendants have told the Court that "[t]he Knauf Defendants have also paid out $6 million in punitive damages in a prior suit arising from the same alleged acts or series of conduct."  (Doc. #38, pp. 17-18.)

Plaintiff also argues that the prior punitive damages award should be compared with defendants' total cost to resolve the claims – in this case $1 billion – not just the [$700] million paid to settle the 5,500 claims.  (Doc. #70, p. 78.)  Plaintiff argues that the prior punitive damages award is insufficient when compared to Defendants' $1 billion-plus total costs.  (Id. at 78-79.)

The Court is not convinced that the proper comparator is something other than compensatory damages as reflected in the actual settlement amounts.  Nonetheless, defendants do not argue

against the use of the $1 billion figure, see Doc. #43; Doc. #70,

so the Court will assume for purposes of this motion only that the

$1 billion amount is the relevant comparator.  The resulting ratio

($6 million/$1 billion) is 0.006:1.

Finally, an important factor in determining sufficiency, one

specifically mentioned in the statute, is "whether the defendant's

act or course of conduct has ceased."  Fla. Stat. § 768.73(2)(b).

Plaintiff argues that Defendants' misconduct was failing to issue

a post-sale warning about the defective drywall, and that this

failure to provide notice and warning continues to this day.

Plaintiff relies heavily on the confidentiality provisions of the

settlement agreement with Banner Supply, and KPT's failure to

otherwise provide notice of the defects to the public.  (Doc. #70

at 79, 84-90.)

With respect to the existence of post-sale duty to warn,

Magistrate Judge Baker stated the following in his Report and

Recommendation, without objection from plaintiffs:

> This post-sale failure-to-warn issue raised by
> Plaintiffs previously arose during the MDL proceedings
> and was squarely addressed by the presiding District
> Judge Fallon. In Re: Chinese-Manufactured Drywall
> Products Liability Litigation, Civil Action MDL 2047,
> No. 14-2722, 2020 WL 2488240, at *10 (E.D. La. 2020):
>
> > Plaintiffs collectively contend that
> > Defendants should be estopped from arguing
> > that Plaintiffs were on notice of the defect
> > any earlier than a formal Chinese drywall
> > inspection because Defendants failed to comply
> > with their post-sale duty to warn. Indeed,

> Florida law recognizes that in some circumstances, manufacturers have a post-sale duty to warn downstream consumers of defects in their products, even after the goods have left the manufacturer's possession or control. [citations omitted} . . .
>
> This duty is premised on the Restatement (Third) of Torts, which provides that a post-sale duty to warn is triggered when "[a] reasonable person in the seller's position would provide a warning after the time of sale if . . . the seller knows or reasonably should have known that the product poses a substantial risk of harm to persons." Restatement (Third) of Torts, § 10(b)(1).
>
> Even assuming, arguendo, that a post-sale duty to warn does exist, the Restatement (Third) of Torts clarifies that a post-sale duty to warn applies only when "a warning can be effectively communicated to and acted on by those to whom a warning might be provided." Restatement (Third) of Torts § 10(b)(3). In overseeing this MDL, the Court has become intimately familiar with the distribution process that brought Knauf manufactured drywall into this country. Due to the size and geographic scope of the market and the complexity of the distribution network, the Court concludes that it would not have been reasonably possible for Knauf to identify all those to whom a post-sale duty to warn may have been owed.

(Doc. #44, pp. 25-26.)

Additionally, the behavior which connects the cases is not a failure to warn. The claim in the Judge Complaint is that defendants are liable for damages for their role in the design, manufacture, importing, distributing, delivery, supply, marketing, inspecting, installing, or sale of the defective Chinese-

16

manufactured drywall. (Doc. #1, pp. 1-2.)  It was established that defendants have not been involved in such conduct in Florida since August 2006.  The issues with Chinese-manufactured drywall were well-known to the public by at least 2009, when enough federal cases had been filed to require an MDL proceeding.  Plaintiff has failed to establish by clear and convincing evidence that defendants' relevant act or course of conduct has not ceased.

As discussed earlier, defendants' financial condition is relevant to the sufficiency of punitive damages.  No such evidence was presented at the evidentiary hearing.

In sum, defendants were involved with Chinese-manufactured drywall in Florida for about eight months, ending in August 2006. The net proceeds from this business activity was about $3 million, and one set of plaintiffs has already been awarded punitive damages of twice that amount.  The amount paid for settlement of compensatory damages (approximately $700 million) and the total costs to defendants as a result of the MDL proceedings (in excess of $1 billion) are obviously significant. (Doc. #70, p. 103.)  No information is known from the partial summary judgment documents or the evidentiary hearing as to the financial condition of defendants.  The Court concludes that plaintiff has not established by clear and convincing evidence that the prior award of punitive damages was insufficient.

Accordingly, it is now

**ORDERED:**

That portion of Defendants' Motion for Partial Summary Judgment as to Issues Common to All Cases (Doc. #38) addressing affirmative defense thirty-two as it relates to punitive damages is treated as a motion in limine (see Doc. #51, pp. 18-19) and is **GRANTED** in favor of defendants.  Plaintiff will not be allowed to seek punitive damages in this case.

**DONE** and **ORDERED** in Fort Myers, Florida this ___13th___ day of November 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

18